# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

FAITH S.,[1]

      Plaintiff,

  v.

FRANK BISIGNANO,[2]
      Defendant.

CIVIL ACTION NO. 1:24-cv-00989

(Magistrate Judge Latella)

## MEMORANDUM

This is an action brought under Section 1383(c) of the Social Security Act and 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Faith S.'s claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. (Doc. 1). For the reasons

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial. *See Tammy H. v. Frank Bisignano*, Commissioner of Social Security, No. 1:24-cv-00838, Docket No. 19 at n.1 (M.D. Pa. Aug. 27, 2025).

[2] "In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office." *Kentucky v. Graham*, 473 U.S. 159, 166 n.11 (1985) (citing Fed. R. Civ. P. 25(d)(1)). Frank Bisignano was sworn in as the Commissioner of Social Security on May 7, 2025. Accordingly, we have substituted him as the Defendant in this action.

expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision will be affirmed.

## I.    <u>**Background and Procedural History**</u>

On November 23, 2021, Plaintiff Faith S. filed an application for Title II disability benefits. In this application, Faith S. claimed disability beginning July 20, 2021. (Doc. 1, p. 2). The Social Security Administration initially denied her claim on June 23, 2022. (*Id.*). Faith S. filed a request for a hearing before an Administrative Law Judge ("ALJ") on December 7, 2022. (*Id.*). ALJ Howard Kauffman conducted the requested hearing on June 7, 2023. (*Id.*).

In a written opinion dated July 13, 2023, the ALJ determined that Faith S. is not disabled and therefore not entitled to the benefits sought. (*Id.*). Faith S. appealed the ALJ's decision to the Appeals Council, which denied her appeal on April 19, 2024. (*Id.*). On June 17, 2024, Plaintiff filed the instant action. (Doc. 1). The Commissioner responded on August 6, 2024, providing the requisite transcripts from the disability proceedings on the same day. The parties then filed their respective briefs, (Doc. 17; Doc. 19; Doc. 20), with Faith S. alleging three errors warranting reversal or remand. (Doc. 17, p. 1). The parties consented to proceed before a magistrate judge on June 21, 2024, (Doc. 7), and this case was reassigned to the undersigned on June 10, 2025.

## II.    The ALJ's Decision

In a decision dated July 13, 2023, the ALJ determined that Faith S. "has not been under a disability within the meaning of the Social Security Act from July 20, 2021, through the date of this decision." (Tr. 18). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R. § 404.1520. The ALJ determined that Faith S. met the insured status requirements of the Social Security Act through December 31, 2025. (Tr. 19).

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. The ALJ determined that Faith S. "has not engaged in [SGA] since July 20, 2021, the alleged onset date." (Tr. 20). Thus, the ALJ's analysis proceeds to step two.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does

3

not have an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step.

The ALJ found that Faith S. "has the following severe impairments: chronic obstructive pulmonary disease, lumbar degenerative disc disease, kidney disease, vasculitis, and osteoporosis." (Tr. 20). The ALJ also identified Faith S.'s non-severe impairments as "steroid-induced diabetes mellitus, deep vein thrombosis, macular degeneration, high blood pressure, and high cholesterol." (*Id.*). Faith S. was also admitted to the hospital for two weeks in December 2021 for acute hypoxemic respiratory failure due to COVID-19. (Tr. 72). Because she did not report ongoing long term or lingering complications from the illness, the ALJ also identified COVID-19 as a non-severe impairment. (Tr. 20).

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ determined that none of Faith S.'s

impairments, considered individually or in combination, met or equaled a Listing. (Tr. 21). Specifically, the ALJ considered Listings: 3.02 (chronic respiratory disorders due to any cause except cystic fibrosis); 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root); 6.05 (chronic kidney disease, with impairment of kidney function); 4.00 (cardiovascular system) and specifically 4.11 (chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system); The ALJ also noted that while osteoporosis does not have a specific listing, "the medical records do not indicate osteoporosis resulting in a documented medical need for a walker, bilateral canes, or bilateral crutches . . . Accordingly, osteoporosis does not satisfy the 1.00 Listing" (Musculoskeletal Disorders). (Tr. 21).

Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), crafted upon consideration of the medical evidence provided. The ALJ determined that Faith S.

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with lifting and/or carrying twenty pounds occasionally and ten pounds frequently and sitting, standing, or walking for six hours each per eight-hour workday along with unlimited posturals[3] except occasional balancing and stooping but never climbing

---

[3] "Posturals," although not explicitly defined, is frequently used to refer to postural movements. *See, e.g.*, *Hunter v. Comm'r of Soc. Sec.*, No. 12-CV-11257, 2013 WL 4496249, at *12 (E.D. Mich. Aug. 21, 2013) ("all posturals—that means climbing ramps, stairs, ladders, ropes, scaffolds, balancing, stooping, kneeling, crouching, and crawling—are limited to occasional"); *Means v. Kijakazi*, No. 4:21-CV-00196-MBS, 2022 WL 1683697, at *1 (D.S.C. May 26, 2022) ("posturals like climbing,

> ladders, ropes, or scaffolds and never tolerating concentrated exposure
> to vibration, fumes, dusts, odors, poor ventilation, unprotected heights,
> and moving machinery parts.

(Tr. 21–22). Having assessed a claimant's RFC, at step four the ALJ must determine whether the claimant has the RFC to perform the requirements of their past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A finding that the claimant can still perform past relevant work requires a determination that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as work the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). If the claimant cannot perform past relevant work or has no past relevant work, then the analysis proceeds to the fifth step.

The ALJ noted Faith S.'s past relevant work as a short order cook at Sheetz, a gas station and convenience store chain. The record shows that Faith S.'s work history dates from February 2005 to June 2021, satisfying the fifteen-year durational requirement. The position of short order cook, DOT# 313.374-014, is classified as a semi-skilled occupation with a Specific Vocational Performance (SVP) of 3. A position with an SVP of 3 means that the job skills can be learned in

---

stooping, crawling, and kneeling"); *Rose v. Astrue*, No. CIV.A. 3:07CV53, 2008 WL 2001637, at *23 (N.D.W. Va. May 6, 2008) ("precluded from performing all but sedentary work with a sit/stand option with only occasional posturals, such as bending").

6

between one and three months. (Tr. 26). To work as a short order cook, a claimant must also have the strength to perform light work, which is defined as work that

> [I]nvolves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the ALJ] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors . . . .

20 C.F.R. § 404.1567(b). This generally requires the ability to stand and carry weight for approximately six hours per day. *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

The ALJ found that Faith S. has the residual functional capacity to perform her past work as a short order cook work, and that she "is able to perform it as actually and generally performed." (Tr. 26). Her RFC restricts her to light work with unlimited postural movements except occasional balancing and stooping, but never climbing or tolerating concentrated exposure to various environmental pollutants; a short order cook is a light, semiskilled occupation with no restrictions beyond that already set out in the RFC. (Tr. 26–27). The ALJ concluded that

> the claimant can perform the occupation of short order cook, DOT# 313.374-014, as generally performed. In making this finding, the [ALJ] also note[d] the vocational expert testified that an individual with the claimant's age, education, work history, and [RFC] could perform the requirements of short order cook as generally performed in the national economy.

(Tr. 27). As a result of this analysis, the ALJ determined that Faith S. was not disabled and denied her application for benefits. (*Id.*).

## III.    Standard of Review

In order to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or

8

equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(b)(3).

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). If the factual findings of the Commissioner are supported by substantial evidence and decided according to correct legal standards, a court will be bound by those findings. *Joshua L. v.*

*Colvin*, No. 23-CV-4528, 2024 WL 5170747, at *7 (E.D. Pa. Dec. 19, 2024). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether Faith S. is disabled, but whether the Commissioner's finding that Faith S. is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that

10

an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012) ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

## IV.    Discussion

Faith S. argues that the ALJ erred in three ways. First, she claims that the ALJ failed to properly evaluate the opinion of the consultative internal medicine examiner, Dr. Ahmed Kneifati. (Doc. 17, p. 7). Second, she claims that the ALJ's RFC assessment is not supported by substantial evidence. (*Id.* at 12). And third, she alleges that "the ALJ's multiple errors with symptom evaluation compel reversal." (*Id.* at 17).

### A. The ALJ Did Not Err in His Treatment of Dr. Kneifati's Opinion

Faith S. asserts that while the ALJ did provide "some reasons" for discounting Dr. Kneifati's opinion, those reasons were "logically unsound." (Doc. 17, p. 7). She argues that because the doctor's medical opinion was supported by an explanation and was consistent with other evidence, "the ALJ should have found the opinion persuasive." (Doc. 17, p. 7). Plaintiff points to evidence in the

11

physical examination that supports the limitations that Dr. Kneifati recommended and concludes that "[h]ad the ALJ actually considered this evidence, he would have found [] Dr. Kneifati's opinion to be persuasive." (*Id.* at 9). The Commissioner responds to this by arguing that the ALJ properly explained his decision for finding Dr. Kneifati's opinion unpersuasive, as he found that "it was not supported by the record or consistent with Dr. Kneifati's own contemporaneous examination findings." (Doc. 19, pp. 11–12). Essentially, therefore, the crux of Plaintiff's first argument is a disagreement with the ALJ's evaluation of the record and the fact that he did not find Dr. Kneifati's opinion persuasive.

When presented with a disputed factual record, "it is well-established that '[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations.'" *McClane v. Colvin*, No. 3:24-CV-00535, 2025 WL 1139276, at *11 (M.D. Pa. Jan. 31, 2025), *report and recommendation adopted sub nom. McClane v. Dudek*, No. 3:24-CV-535, 2025 WL 1139275 (M.D. Pa. Apr. 16, 2025) (quoting *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)). As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

12

Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96-5p do not apply to newly filed or pending claims after March 27, 2017). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner articulates "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 404.1520c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c).

The most important of these factors are "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2). Supportability refers to objective evidence and explanations that a medical source provides. 20 C.F.R. § 404.1520c(c)(1). When a source presents objective findings and a clear explanation for a limitation, that source's opinion is deemed to be more persuasive. *Jason F. v. Kijakazi*, No. 4:22-CV-626, 2023 WL 6307985, at *17 (M.D. Pa. July 28, 2023), *report and recommendation adopted sub nom. Fetterhoff v. Kijakazi*, No. 4:22-CV-00626, 2023 WL 6305788 (M.D. Pa. Sept. 27, 2023).

13

Consistency refers to how consistent a medical opinion is with evidence provided through other medical sources in the record; naturally, if an opinion is consistent with evidence from other medical sources, it is more persuasive. *Id.* at *18.

To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d at 704, 706–07. An ALJ need not undertake an exhaustive discussion of all the evidence or "use particular language or adhere to a particular format in conducting his analysis." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see Hur*, 94 F. App'x at 133 ("There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record."). However, an ALJ must ensure "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505; *see, e.g.*, *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006) ("The only requirement is that reading the ALJ's decision as a whole, there must be sufficient development of the record and explanation of findings.").

With this "significantly deferential" standard in mind, "[o]ur task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record;" and if evidence reasonably supports the ALJ's conclusion. *Vioral v. King*, No. 1:24-CV-283, 2025 WL 539946, at *7 (M.D. Pa. Feb. 18, 2025). Here,

ALJ Kauffman adequately addressed both the opinion's supportability and consistency in his evaluation, and explained his reasoning such that substantial evidence supports his decision.

Dr. Ahmed Kneifati performed a consultative internal medical examination on Faith S. in June 2022. He found that she

> walked with a widened gait using short steps, squatted 50 percent, and had tenderness in the lumbar and lower thoracic spine, but she stood on her heels and toes and walked on her toes and heels with some difficulty, had negative straight leg raise tests, had stable joints, had 5/5 strength, and had normal range of motion other than some decrease with the lumbar spine (Tr. 851–52, 876–89). Although Plaintiff did not use a cane for a portion of the examination, she was steadier with less pain in her back when using a cane (Tr. 851). Plaintiff also did not need assistance climbing on and off the examination table and did not need help rising from a chair (Tr. 851).

(Doc. 19, pp. 7–8). Dr. Kneifati ultimately opined that Faith S. is "limited to lifting and carrying ten pounds occasionally, to sitting five hours, to standing three hours, and to walking two hours with the use of cane along with frequent operation of foot controls, occasional postural activities, and occasional environmental limitations except with tolerating continuous exposure to dust, odors, fumes, pulmonary irritants, and vibrations." (Tr. 25) (citing Tr. 870–74).

Faith S. argues that the ALJ erred in finding Dr. Kneifati's opinion not persuasive for essentially three reasons. First, Plaintiff contests the ALJ's finding that the limitations recommended by Dr. Kneifati were not consistent with objective clinical findings. (Doc. 17, p. 8). Specifically, the ALJ stated that "the

exertional limitation to sedentary work is not consistent with the objective clinical findings showing full strength and good ranges of motion in the upper and lower extremities and observed abilities to move around the examination rooms without difficulty." (Tr. 25). In response, Plaintiff points to evidence in the record which purports to show objective findings that are consistent with these limitations, such as limited lumbar flexion of 50 degrees and limited lateral flexion of 5 degrees as well as an observation that Faith S. walked in short steps and had a widened gait. (Doc. 17, pp. 8–9).

While Plaintiff may disagree with the ALJ's evaluation, the ALJ did not discredit Dr. Kneifati's opinion without explanation or for the wrong reasons; instead, The ALJ provided citations to the record and fully explained the grounds for his decision. *See Drumm v. Kijakazi*, No. CV 20-3309, 2022 WL 1320394, at *4 (E.D. Pa. May 3, 2022); *McClane v. Colvin*, No. 3:24-CV-00535, 2025 WL 1139276, at *13 (M.D. Pa. Jan. 31, 2025), *report and recommendation adopted sub nom. McClane v. Dudek*, No. 3:24-CV-535, 2025 WL 1139275 (M.D. Pa. Apr. 16, 2025). For example, Faith S. states that had the ALJ considered the evidence, including Dr. Kneifati's observation of a limited range of motion, "he would have found [] Dr. Kneifati's opinion to be persuasive." (Doc. 17, p. 9). Yet the ALJ did address the range of motion, finding that she had a "good" range of motion in her upper and lower extremities, with only "some decreased lumbar range of motion."

16

(Tr. 25). The ALJ did not disregard the evidence as Plaintiff contends; instead, he did consider it but found that it was not significant enough to warrant the limitations that Dr. Kneifati recommended. *McClane*, 2025 WL 1139276, at *13.

Next, the Plaintiff claims that the ALJ erred by finding that Dr. Kneifati's opinion was not consistent with "other medical evidence." (Doc. 17, p. 10). Faith S. then describes the medical evidence that supports her claims of lower back pain:

> X-rays showed an increase in the thoracic compression fracture. (Tr. 1330, 1337) She was diagnosed with thoracic spine fracture. (Tr. 1330) During an emergency room visit on June 13, 2022, Plaintiff reported worsening low back pain. (Tr. 1027) She was diagnosed with back pain, lumbar compression fracture, and thoracic compression fracture, and MRI was ordered. (Tr. 1028) MRI imaging revealed acute L2 inferior endplate and L4 superior endplate compression fracture with less than 25% vertebral body height loss, no retropulsion, as well as chronic wedge compression deformity of T7 with greater than 50% height loss. (Tr. 1028) In June 2022, Plaintiff affirmed back pain, difficulty ambulating, and fatigue. (Tr. 1018) In July 2022, Plaintiff underwent L1 to L4 vertebroplasty in the lumbar spine for painful compression fractures. (Tr. 917, 995-96) On July 20, 2022, Plaintiff sought emergency care for post-procedural low back pain. (Tr. 928) She was diagnosed with bilateral low back pain. (Tr. 929-30) During a neurosurgical consul[t] in August 2022, Plaintiff reported severe pain with intermittent spasm in the low back. (Tr. 917) Spine x-ray showed compression of the superior endplate of T12 vertebral body. Id. Physical examination demonstrated focal tenderness in the thoracolumbar junction area and positive straight leg raise test. *Id.* Vertebroplasty or vertebral augmentation of T11 andT12 was ordered. (Tr. 918) In August 2022, Plaintiff underwent T11 and T 12 vertebral augmentation/kyphoplasty. (Tr. 889).

(Doc. 17, pp. 10–11). The ALJ does not appear to contest this medical history, but instead states that "the longitudinal medical records show[] good response to

medication management and to surgery, which is not consistent with Dr. Kneifati's opinion." (Tr. 25). As the Commissioner points out in his brief, there is evidence in the record that shows Faith S. experienced some relief from her lower back pain in the month following her procedure. (Doc. 19, p. 17, citing Tr. 917). In August 2022, she had another back procedure, and in the following month she "note[d] almost no pain in the back and appear[ed] to be pleased with the pain response from the treatment." (Tr. 1750). The ALJ considered this evidence and used it to explain why the more severe limitations recommended by Dr. Kneifati in June 2022 were not persuasive to him and conflicted with the longitudinal records. The ALJ "expressly articulated the basis of his evaluation and his findings with respect to the persuasiveness of this opinion." *Gonzalez Rivera v. Kijakazi*, No. 3:21-CV-01574, 2022 WL 4585839, at *8 (M.D. Pa. Sept. 29, 2022). Substantial evidence therefore supports the ALJ's analysis as to the finding regarding consistency with other medical evidence.

Lastly, Plaintiff takes issue with the ALJ's finding that Dr. Kneifati's opinion was based on the claimant's subjective reporting of her difficulties and limitations. (Doc. 17, p. 11) (citing Tr. 25). Plaintiff contends that "the ALJ failed to realize that, as an internist hired to evaluate Ms. [S.] for the purposes of disability application, Dr. Kneifati had no personal relationship with Ms. [S.] and had no motivation to author a favorable opinion out of sympathy for a stranger he

18

evaluated once." (*Id.*). However, this argument does not directly address the ALJ's

reasoning, which was that Dr. Kneifati's opinion relied primarily on Faith S.'s

subjective reports rather than objective clinical findings. The ALJ did not suggest

that Dr. Kneifati imposed stricter limitations than the state agency physicians[4] out

of sympathy, but rather concluded that Dr. Kneifati's opinion was not adequately

supported by the medical record.

Ultimately, the ALJ provided adequate rationale as to why he found Dr.

Kneifati's opinion to be not persuasive, and substantial evidence supports the

ALJ's analysis and evaluation of the record. As Judge Martin Carlson aptly

observed:

> In sum, while McClane argues on appeal that the ALJ erred in this assessment, at bottom this argument invites us to re-weigh the evidence. This we may not do. See, e.g., Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) ("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder'")). **In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported**

---

[4] Dr. Kevin Hollick issued a medical opinion in June 2022 (Tr. 71–74), and Dr. Joanna Deleo issued one in October 2022 (Tr. 81–85). Both of these state agency physicians opined that the claimant could lift and carry twenty pounds occasionally and ten pounds frequently; could stand and/or walk for six hours and sit for six hours; could occasionally balance or stoop but never climb ladders, ropes, or scaffolds; and recommended the claimant avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. The ALJ determined that those opinions were "consistent with the objective clinical findings showing full strength and good ranges of motion in the upper and lower extremities and observed abilities to move around the examination rooms without difficulty," and found the opinions of the state agency physicians to be persuasive. (Tr. 25).

**by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding.** Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we recommend the Court find that substantial evidence supported the ALJ's evaluation of this case.

*McClane v. Colvin*, No. 3:24-CV-00535, 2025 WL 1139276, at *13 (M.D. Pa. Jan. 31, 2025), *report and recommendation adopted sub nom. McClane v. Dudek*, No. 3:24-CV-535, 2025 WL 1139275 (M.D. Pa. Apr. 16, 2025) (emphasis added).

B.  Substantial Evidence Supports the ALJ's RFC Assessment

The ALJ found that Faith S. had the RFC to perform light work, with unlimited postural movements with the exception of only occasional balancing and stooping. (Tr. 21–22). Plaintiff claims that the ALJ erred in determining her RFC by failing to address her use of a cane and her need to elevate her legs throughout the day. (Doc. 17, p. 12).

1. *Applicable Legal Standards*

The ALJ is tasked with assessing a claimant's RFC. 20 C.F.R. § 404.1546(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121

20

(3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). An RFC reflects the *most* that an individual can still do, despite his or her limitations, and is used at steps four and five of the ALJ's analysis. 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018).

The Third Circuit instructs that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected. *Cotter v. Harris*, 642 F.2d 700, 704, 706–07 (3d Cir. 1981). Because "an ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* The ALJ need not, however, undertake an exhaustive discussion of all the

evidence. *See, e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

In making the RFC determination, "the ALJ must consider all evidence before him" and "evaluate every medical opinion . . . receive[d]." *Burnett*, 220 F.3d at 121 (citations omitted); 20 C.F.R. § 404.1527(c); *see also Adorno v. Shahala*, 40 F.3d 43, 48 (3d Cir. 1994) ("The Secretary must 'explicitly' weigh all relevant, probative and available evidence. . . . The Secretary may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects."). Social Security Ruling ("SSR") 96-5p further clarifies that "opinions from any medical source on issues reserved to the Commissioner must never be ignored," and specifically states that the ALJ's "decision must explain the consideration given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183, at *3, *6 (July 2, 1996).

## 2.  *The ALJ Properly Considered Faith S.'s Cane Use*

While there is evidence, including her own testimony, that Faith S. uses a cane for support while walking, that alone is not sufficient to mandate that it be included in the RFC. *Williams v. Colvin*, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014). To rely on evidence that a claimant uses a hand-

held assistive device, such as a cane, to support a disability claim, the assistive device must be *medically necessary*. *Figueroa v. Kijakazi*, No. 1:22-CV-194, 2023 WL 2432909, at *10 (M.D. Pa. Mar. 9, 2023). The Social Security Regulations explain that in order for a hand-held assistive device to be medically required, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p. Reference to use of a cane without a discussion of its medical necessity is therefore not enough to support a finding that a cane is medically necessary. *Howze v. Barnhart,* 53 F. App'x 218, 222 (3d Cir. 2002). And "[a]bsent such documentation, an ALJ need not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor." *Williams v. Colvin*, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014) (citing *Howze,* 53 F. App'x at 222).

The Plaintiff correctly states that "[t]reatment notes document[] Ms. [S.]'s gait abnormality and cane use." (Doc. 17, p. 14). She points to evidence in the record that shows Faith S. uses a cane. *See, e.g.*, Tr. 849 (Dr. Kneifati indicated that she uses a cane to get around, and brought one with her on the day of the examination); Tr. 871 (Dr. Kneifati checked "yes" indicating that she required the

use of a cane to ambulate); Tr. 940 (at a visit to the Milton S. Hershey Medical Center in June 2023, the record indicates the use of an ambulatory aid); Tr. 880 (Faith S. checked off on a form that she used a cane as an assistive device). There is also plenty of evidence from Faith S. herself that she uses a cane to walk: in a function report she filled out, she indicates that she uses a walker or a cane when she walks, although neither of them was prescribed by a doctor. (Tr. 249). She also testified at the hearing that she uses a cane both to ambulate and stand. (Tr. 48–49).

Despite this evidence, which comes predominately from Faith S.'s own statements, there has not been medical documentation that establishes the *need* for a hand-held assistive device to walk or stand, let alone a discussion of the circumstances for when it is needed. *See* SSR 96-9p. The fact that Dr. Kneifati checked a box indicating that Faith S. requires a cane to ambulate and that she testified she needed one does not compel a finding that a cane is medically necessary. *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) ("Dr. Khan checked the box for 'hand-held assistive device medically required for ambulation' . . . Other than that, there are multiple references to the fact that appellant uses a cane but no discussion of its medical necessity. The evidence presented by appellant was insufficient to support a finding that his cane was medically necessary."). Because the Plaintiff has not presented "the degree of medical documentation required by Social Security regulations pertaining to [her]

24

use of a cane to the ALJ, [she] cannot now be heard to complain that the ALJ failed to fully credit this largely undocumented element of [her] disability claim." *Phillips v. Colvin*, No. 1:16-CV-1033, 2017 WL 3820973, at *9 (M.D. Pa. Aug. 16, 2017), *report and recommendation adopted sub nom. Philips v. Colvin*, No. 1:16-CV-1033, 2017 WL 3780138 (M.D. Pa. Aug. 31, 2017).

But even though the ALJ was not required to consider Faith S.'s purported use of a cane, the ALJ still discussed it in his written opinion. Relying on the guidance from SSR 96-9p, he explained why he did not include a hand-held assistive device limitation in the RFC.

> While the claimant reports that she uses a cane and a walker when walking, the medical providers did not prescribe the claimant a cane or a walker. Further, the objective clinical examinations show full strength and good ranges of motion in the upper and lower extremities and observed abilities to move around the examination rooms without difficulty. Further, the providers noted that the claimant retained the ability to attend to household tasks independently. The claimant responded well to various treatments including surgery and medication management. Moreover, SSR 96-9 states [that there must be sufficient medical documentation to find a hand-held assistive device to be medically required, including the circumstances for which it is needed.] Here, no parameters were identified in the medical records as analyzed above which is insufficient under SSR 96-9p.

(Tr. 24). There was therefore no error by the ALJ when he did not incorporate a hand-held assistive device into Faith S.'s RFC.

### 3. The ALJ Adequately Evaluated Faith S.'s Need to Elevate Legs

Plaintiff also claims that the ALJ did not properly evaluate Faith S.'s need to rest and elevate her legs throughout the day. (Doc. 17, p. 15). Plaintiff correctly states that "[o]nce a claimant alleges that he suffers a work-related functional restriction, SSR 96-8p obligates an ALJ to explain how evidence either supports or fails to support that limitation." *See* SSR 96-8p ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."). And Plaintiff asserts that the RFC assessment is not adequately supported because the ALJ "did not engage with this evidence as it applied to Ms. [S.'s] need to rest and elevate her legs during the day to relieve back pain, lower extremity swelling, and fatigue." (Doc. 17, p. 16).

However, as the Commissioner notes, the ALJ did, in fact, address these purported limitations: "Orthopedics followed the claimant for back pain (Exhibits 4F/167 and 6F/175-77). She treated back pain and muscle spasm conservatively with Tylenol and home exercises (Exhibit 4F/189). She underwent kyphoplasty in July 2022 at L2 and L4 (Exhibit 6F/46), which improved lower back pain and lumbar muscle spasm. She noted no pain with an ability to sit for hours without trouble, to stand, and to walk." (Tr. 23). The ALJ also noted that the Plaintiff wears compression socks for the edema in her lower extremities. (*Id.*). The ALJ therefore did discuss this purported limitation, and explained how the medical evidence of

26

record, the treatment Faith S. has received and the success of those treatments, and information regarding her daily activities demonstrate that the stated RFC accommodate her medically determinable impairments. (Tr. 23–26).

Additionally, the Plaintiff claims that the ALJ failed to properly analyze the evidence, and instead "merely summariz[ed] the evidence and reach[ed] the conclusion that Ms. [S.] could perform light work" without actually weighing it. (Doc. 17, p. 16). However, courts have noted that "'summarizing the evidence' is essentially the purpose of the ALJ's decision." *Vioral v. King*, No. 1:24-CV-283, 2025 WL 539946, at *8 (M.D. Pa. Feb. 18, 2025). The statutory law governing social security appeals recognizes the voluminous records in these cases renders it impossible for an ALJ articulate how all of the factors for all of the medical opinions were considered. 20 C.F.R. § 404.1520c(b)(1). The ALJ is therefore only required to address the most important factors that he or she must consider when evaluating medical finding, namely persuasiveness, supportability, and consistency. *Vioral*, 2025 WL 539946, at *8 (citing 20 C.F.R. § 404.1520c(b)(2)). Plaintiff's argument that the ALJ failed to provide sufficient detail or explanation is therefore unpersuasive.

    C. <u>Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Subjective Symptoms.</u>

Lastly, Plaintiff argues that the ALJ mischaracterized the record by finding that Faith S.'s treatment "was essentially routine and conservative in nature." (Doc.

17, p. 17) (citing Tr. 26). Plaintiff asserts that Faith S. "sought emergency care and underwent surgical interventions during the period at issue" such that it was incorrect for the ALJ to characterize her treatment in that manner. (*Id.*). She also claims that it was error the ALJ to not consider her consistent work history when evaluating her subjective allegations, (*id.* at 18), and that the ALJ's citing to her ability to perform household tasks did not adequately explain her ability, or lack thereof, to perform in a workplace setting. (*Id.* at 19).

The issue is not whether Plaintiff disagrees with the ALJ's characterization, but rather whether there was a reasoned explanation behind the ALJ's evaluation of the claimant's subjective complaints. *Jennifer B. v. Kijakazi*, No. 1:20-CV-20364, 2022 WL 577960, at *15 (D.N.J. Feb. 25, 2022) ("[T]he Court finds that the ALJ sufficiently explained her reasoning in evaluating Plaintiff's subjective complaints. The ALJ's findings in this regard are supported by substantial evidence in the record and are therefore entitled to this Court's deference."). As it relates to Faith S.'s treatments, Plaintiff may disagree whether they were only "routine and conservative," but after reviewing the factual findings of the ALJ, it is clear that his opinion is supported by substantial evidence and is therefore entitled to deference.[5] *Davis v. Comm'r of Soc. Sec.*, 105 F. App'x 319, 321 (3d Cir. 2004).

---

[5] Indeed, "[o]verturning an ALJ's credibility determination is an 'extraordinary step,' as credibility determinations are entitled to a great deal of deference." *Metz v. Fed. Mine Safety & Health Rev. Comm'n*, 532 F. App'x 309, 312 (3d Cir. 2013).

The ALJ engaged in a lengthy discussion of Faith S.'s treatments. For example, as it relates to effects of chronic obstructive pulmonary disease (COPD),

> [t]he claimant presented with dyspnea on exertion secondary to an infection. She had a diagnosis of COPD but did not require medication management (Exhibit 2F/9). Blood oxygen levels were 98 percent (Exhibit 1F). CT scans of the chest found no pneumothorax or pleural effusion (Exhibit 3F). Physical examinations found lung fields clear to auscultation without tachypnea, coughing, and wheezing (Exhibits 4F/239 and 6F/11). The claimant monitored her oxygen levels at home.

(Tr. 23). As it relates to her back pain, she initially treated it and the muscle spams with Tylenol and home exercises. (*Id.*, citing Tr. 592) ("Return to prior treating conservatively with Tylenol and home exercises. Exercises were provided.")[6]. She also "underwent kyphoplasty in July 2022 at L2 and L4 (Exhibit 6F/46), which improved lower back pain and lumbar muscle spasm. She noted no pain with an ability to sit for hours without trouble, to stand, and to walk. She notes walking without the need of a walker. She attends to routine activities independently at home without difficulty. Orthopedics observed the claimant walking without difficulty (Exhibits 6F/35 and 8F/9)." (Tr. 23). And for her chronic kidney disease and the following edema in the lower extremities, she took medication, wore compression socks, and elevated her feet. (Tr. 23). Overall, the ALJ properly

---

[6] Notably, it was Dr. Michael Partin, Faith S.'s own healthcare provider, who used the word "conservative" as it related to treatment of her lower back pain in an outpatient note from an office visit at Hershey Medical Center in May 2022. (*See* Tr. 591–92).

analyzed the record such that substantial evidence supports his conclusion that her treatment was routine and conservative, and that these treatments appeared to ameliorate her symptoms. (Tr. 26).

The Plaintiff also contends that the ALJ erred in not considering Faith S.'s work history when evaluating her subjective allegations, and that the fact that she had maintained consistent employment at Sheetz for over sixteen years should have bolstered her subjective allegations of the symptoms. (Doc. 14, pp. 16–17). "The United States Court of Appeals for the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints where the ALJ did not 'explicitly discuss his years of uninterrupted employment[,]' but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints." *Vilma G. v. Kijakazi*, No. 2:21-CV-1402, 2022 WL 1451567, at *10 (D.N.J. May 9, 2022) (citing *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015)). The ALJ here discussed why other evidence, including the physical examinations, treatment, and her daily activities, undermined Faith S.'s subjective complaints. The ALJ thoroughly discussed the evidence in a comprehensive and analytical manner, and included sufficient statements of facts on which he based his ultimate conclusions. *Davis v. Comm'r of Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (quoting *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981)).

The Plaintiff finally notes that the ALJ took the fact that Faith S. was able to drive, shop, maintain relationships, watch television, and crochet, and found that those daily activities "are not limited to the extent one would expect given the complaints of disabling symptoms and limitations." (Tr. 24). Plaintiff correctly states that sporadic activity does not disprove disability, and that "disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." (Doc. 17, p. 19) (quoting *Smith v. Califano*, 637 F.2d 968, 971–72) (3d Cir. 1981)). However, an ALJ may nevertheless consider a plaintiff's activities of daily living when evaluating subjective complaints of pain and other symptoms. *Thomas v. O'Malley*, No. 3:22-CV-01774, 2024 WL 1333033, at *5 (M.D. Pa. Mar. 28, 2024). This is also in line with the statutory law governing social security appeals, where ALJs are instructed that daily activities will be considered a factor relevant to symptoms, such as pain. *See* 20 C.F.R. § 404.1529(c)(3)(i).

The ALJ considered Faith S.'s reports of her daily activities and found that

the claimant has provided inconsistent information regarding daily activities in that she has described daily activities that are not limited to the extent one would expect given the complaints of disabling symptoms and limitations. Specifically, the claimant provides for personal care with showering and dressing daily. While the claimant reports that her husband prepares family meals, she also indicates that she can prepare simple meals. She drives a vehicle, and she shops in stores. She has maintained friendships and relationships. For entertainment, she watches television and crochets (Exhibits 3E, 8E, and 5F). These admitted abilities provide support, in part, for the

31

residual functional capacity set forth above and are quite inconsistent with the claimant's allegations of totally debilitating impairments.

(Tr. 24–25). The ALJ therefore did not rely on Faith S.'s statements regarding her daily activities as evidence to find that she was not disabled, but instead, relied on the statements to determine the credibility of Faith S.'s assertions regarding her pain and symptoms. *Asch v. Kijakazi*, No. 3:21-CV-01163, 2022 WL 2336198, at *10 (M.D. Pa. May 13, 2022), *report and recommendation adopted,* No. 3:21-CV-01163, 2022 WL 2329017 (M.D. Pa. June 28, 2022). This is a permissible and expected form of evaluation by the ALJs, and shows that there is substantial evidence to support the ALJ's finding.

## V.    Conclusion

The ALJ's evaluation of the evidence and RFC determination was clearly articulated and supported by substantial evidence. The Commissioner's decision will be affirmed. An appropriate order follows.

**Dated:** March 25, 2026                    *s/ Leo A. Latella*
                                             **LEO A. LATELLA**
                                             **United States Magistrate Judge**